**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA      :

     -against-            :      **92 Cr. 455 (CSH)**

ROY WILLIAM HARRIS, also known as      :      **MEMORANDUM AND ORDER**
Will Harris,

     :

         Defendant.

---

HAIGHT, Senior District Judge:

     Defendant Roy William Harris petitions the Court pursuant to 18 U.S.C. § 3583(e)(1) for an early termination of his supervised release. For the reasons that follow, his petition will be granted.

## I. BACKGROUND

     The history of the case is recounted in the Court's earlier Memorandum and Order reported at 2010 WL 330247 (S.D.N.Y. Jan. 25, 2010), familiarity with which is assumed. For present purposes, it is sufficient to say that following his conviction in the captioned case, the Court sentenced Harris to an 188-month prison term, to be followed by five years of supervised release, and ordered him to pay restitution in the amount of $200 million to the banks that were the victims of his crimes.[1] Harris served his term. His period of supervised release expires on March 6, 2012. His restitution obligation currently stands at just under $200 million.

     The record on this petition has been amplified, at the Court's direction, by Harris's affidavit

---

[1] The Court made that restitution order following remand from the Second Circuit. 60 F.Supp.2d 169 (S.D.N.Y. 1999).

1

dated February 6, 2010, which gives further details with respect to his present employment and the prejudice to that employment resulting from being on supervised release.

Harris was 53 years old when he left prison and is now 56. His working life was spent in the oil business,[2] and after his release from prison, Harris found employment in the petroleum industry. The company Harris works for provides services to that industry which include "risk management, marketing of crude oil and products, and trading for profit." Affid. ¶ 4. The company also "manages an energy equity portfolio for clients," and invests in "petroleum assets such as oil exploration, refineries, pipelines, and terminals." *Id.* The company's clients include "banks, investment banks, hedge funds, refiners, oil producers, and terminal operators." *Id.* ¶ 5. Harris's responsibilities are "to work with clients and trading partners to try and increase our outgoing business, and to find new business in which we might invest." *Id.* His position requires frequent travel to meet with clients within and outside the United States.

Harris's status on supervised release adversely impacts his position with the company and his ability to perform his job in several ways. Companies in the petroleum industry are "unwilling to enter into contracts, build relationships, or even review with their legal departments what disclosures they may or may not have to make if entering into a transaction with an executive who is in essence still serving a federal sentence." Affid. ¶ 3. While on supervised release Harris is "not allowed to enter into contracts on behalf of the company, and like most business dealings, one is not only transacting with a company, but the individual who has been placed in charge of negotiating the deal as well." *Id.* ¶ 9. In those circumstances, Harris's employer has frequently determined that

---

[2] The underlying crimes involved the defrauding of banks which had funded operations at an oil refinery in Puerto Rico owned by a company of which Harris was president.

2

"it is best that I not attend certain meetings or even try and conduct business with specific clients for fear that my status of [not] yet having finished my sentence could be detrimental to the firm and its reputation." *Id.* The company has also decided that until Harris is off supervised release, he can have "no involvement with the equity trading division or its portfolio." *Id.* ¶ 10. While the Probation Department has not restricted Harris's travel, he must obtain Probation's permission before leaving the jurisdiction. On one recent occasion, that process resulted in Harris's inability to attend a business meeting in Calgary, Canada, *id.* ¶ 7., a reflection of the fact that "[t]oday's oil executive is expected to travel on a moment's notice, build relationships, and negotiate and enter into contracts on behalf of the company." *Id.* ¶ 11. Harris states that in the highly competitive petroleum industry, to survive a company "must be able to offer the best possible service and have the highest quality executives it can employ," but being on supervised release "prohibits me from being able to meet these objectives and in turn advance my career. . . . On account of supervised release, my hands are tied. I'm capable yet unable to compete with my peers. . . . Because of supervised release, I'm held back and hence my career is not only stagnated" but endangered during an economic slowdown when " there are literally hundreds of oil executives who are looking for work." *Id.* ¶¶ 11, 12, 14, 15.

The Probation Department does not oppose Harris's petition for early termination of supervised release. It advises the Court that Harris has complied to date with all the terms and conditions of supervision, including scheduled restitution payments (necessarily modest in amount when contrasted with a $200 million restitution order).

The United States Attorney's office opposes Harris's petition, on the sole ground that terminating his supervised release "would include termination of the condition that he comply with

his restitution obligations," which the government resists "in light of his considerable restitution figure and the Government's continuing obligation to seek redress on behalf of the victims of Harris's crimes." Letter Brief dated January 19, 2010 at 3-4.

## II. DISCUSSION

Modifications of the conditions of a term of supervised release or its revocation are governed by 18 U.S.C. § 3583(e). When a defendant petitions a district court for early termination of supervised release, § 3583(e) commands the court to first consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." These factors address "general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997).[3]  After the district court considers those factors, it is authorized by § 3583(e)(1) to terminate a term of supervised release if satisfied that "such action is warranted by the conduct of the defendant released and the interest of justice." While these two statutory considerations, the defendant's conduct and the interest of justice, are related, I discuss them separately *infra*. The decision whether to grant early termination rests within the discretion of the district court. *Lussier*, 104 F.3d at 36.

Harris's conduct post-conviction has been beyond reproach. He was apparently a model

---

[3]  In the order stated in text, the statutory factors are: the nature and circumstances of the offense and the characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims of the offense.

4

prisoner during a long term of incarceration. He has fully complied with the terms and conditions of supervised release. He has obtained and is pursuing productive employment. He is caring for his family.

While this conduct is laudable, it would not suffice, standing alone, to justify early termination. In *United States v. Rasco*, No. 88 CR 817, 2000 WL 45438 (S.D.N.Y. Jan. 19, 2000), at *2, I had occasion to say: "While I am pleased that Rasco maintained a record of good behavior in prison and has adjusted well to supervised release, model prison conduct and compliance with the terms of supervised release is what is expected of him and all others serving terms of imprisonment and supervised release and does not warrant early termination." *See also Lussier*, 104 F.3d at 35 (Only "occasionally" is early termination warranted to the changed circumstances of a defendant, such as his exceptionally good behavior, which make the previously imposed term of supervised release "either too harsh or inappropriately tailored to serve" general punishment goals).

But Harris's case differs from that of Rasco in an important way. Rasco, like Harris, contended that his supervised release status disadvantaged him in employment: "The only reason Rasco provides in requesting relief is that 'if he has to upgrade his financial status and were able to find a better paying job, disclosing that he is currently under federal supervision after serving his sentence would make any reasonable employer question his trust' and 'would be a great impediment taking into consideration the Defendant's age in this very competitive world.'" 2000 WL 45438, at *2. I rejected Rasco's contention as "speculation" which "does not amount to a changed circumstance that makes compliance with supervised release difficult or renders it unduly harsh," and went on to observe that Rasco

has not indicated that he is presently seeking to change jobs or that

> his supervised release has actually prevented him from obtaining more lucrative employment. He merely suggests that it might present a future obstacle in that regard. But I cannot conclude that the mere possibility of a future hardship furnishes a basis for dismissing him early from supervised release.

*Id.*

Harris's situation is entirely different. He demonstrates convincingly that being on supervised release not only creates multi-faceted obstacles to his advancing in his company and the petroleum industry, which seemingly against the odds he has rejoined,[3] but also places his employment at hazard in the present economic downturn.

The second statutory consideration, "the interest of justice," requires that attention be paid to considerations other than Harris's personal circumstances. The government opposes early termination of supervised release because Harris would no longer need to comply with the condition requiring restitution payments. The government stresses its own "continuing obligation to seek redress on behalf of the victims" of Harris's crimes.

Restitution for victims is a mandated sentencing objective. However, it is fair to analyze that objective's application to the facts of a particular case. There are two noteworthy circumstances. First, the victims of Harris's fraud were a consortium of sophisticated international banks, advised by accountants and attorneys, whose existence and business activities survived the fraud. This does not excuse Harris's crimes against them, but the plight of the victims in this case cannot be mistaken

---

[3] During the opinion fixing the restitution amount, I said of Harris that "when he is freed, the nature of the crimes of conviction render problematical his future employment in areas where he has experience." 60 F.Supp.2d at 178. Today I am glad to note that then I was peering into a clouded crystal ball. Moreover, Harris's ability to find responsible employment with a company in the petroleum industry is encouraging evidence of his rehabilitated character and the contributions he can make to society.

for the devastated individual victims of schemers such as Bernard Madoff. Second, the government cannot reasonably expect to achieve during the balance of Harris's supervised release any *meaningful* redress of the banks' $200 million loss, as calculated in the restitution order. The impoverished Madoff victims may, through the efforts of various law enforcement and legal sources, achieve at least some measure of restitution and financial security. Keeping Harris's supervised release restitution obligation in effect until March 2012 will have no effect whatsoever upon the balance sheets of the bank victims. The only practical consequence of continuing supervision for that purpose is to cripple Harris's efforts to achieve full rehabilitation through professional advancement.

The question posed by 18 U.S.C. § 3583(e)(1) is whether, in these circumstances, an early termination of Harris's supervised release would be "in the interest of justice." In approaching that question, I have first, as the statute commands, carefully considered the sentencing purposes set forth in § 3553(a). The magnitude of fraud and Harris's role as its architect count against him, but other sentencing purposes working in his favor tip the balance. Harris's offenses were serious but his term of imprisonment was lengthy, in accordance with the guidelines, and just. There is no need for further general deterrence. There is no need to protect the public from Harris. The desirability of Harris's continued rehabilitation through enhanced professional opportunity trumps whatever minimal restitution might be obtained by continued supervision.[4]

There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path

---

[4] While I have not discussed each statutory factor in detail, this statement in text suffices under Second Circuit authority. *See United States v. Sarvis*, 205 F.3d 1326, 2000 WL 19100, *2 (2d Cir. 2000) ("Although the District Court is not required to set forth detailed findings on each statutory factor, it must consider the listed factors, and a statement that the district judge has considered the statutory factors is sufficient.") (citations and internal quotation marks omitted).

to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him blocked and at risk in his employment, and confer no benefit of any significance upon the victimized banks. Which resolution is "in the interest of justice?" The question is not close. Justice requires the termination of Harris's supervised release.

For the foregoing reasons, the petition of Defendant Harris to terminate his supervised release is GRANTED. His term of supervised release is TERMINATED, effective upon Defendant submitting to a DNA test at the United States Probation Office in Bridgeport, Connecticut on March 18, 2010.

It is SO ORDERED.

Dated: New York, New York
       March 1, 2010


_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

8